UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MARLENE MARIE REYNA,

               Plaintiff,

v.                                                           CASE # 18-cv-00636

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER, PLLC<br>  Counsel for Plaintiff<br>600 North Bailey Ave<br>Suite 1A<br>Amherst, NY 14226 | AMY C. CHAMBERS, ESQ.<br>KENNETH R. HILLER, ESQ.<br>LEWIS L. SCHWARTZ, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | DENNIS J. CANNING, ESQ.<br>PAMELA MCKIMENS, ESQ.<br>SIXTINA FERNANDEZ, ESQ. |

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion for judgment on the administrative record is DENIED and the Commissioner's motion is GRANTED.

**I.     RELEVANT BACKGROUND**

   **A.     Factual Background**

Plaintiff was born in 1957 and she completed two years of college. (Tr. 217, 222). She alleged disability beginning June 23, 2014, due to memory loss, chronic pain, trigeminal neuralgia, chronic obstructive pulmonary disease (COPD), cervical spine disc herniation, lumbar spine disc herniation with radiculopathy, status post transient ischemic attack (TIA), depression, anxiety, and Osteoporosis. (Tr. 217, 221, 268). Plaintiff amended her alleged onset of disability date to January 26, 2015, at the hearing. (Tr. 38). Her date last insured is December 31, 2019[1]. (Tr. 198). She previously worked as a receptionist. (Tr. 222).

   **B.     Procedural History**

On August 26, 2014, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (Tr. 14,72). Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On December 5, 2016, Plaintiff appeared before the ALJ, Julia D. Gibbs. (Tr. 160). On April 7, 2017, ALJ Gibbs issued a written decision finding Plaintiff not disabled under the Social Security Act. (Tr. 11-33). On May 3, 2018 the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-2). Thereafter, Plaintiff timely sought judicial review in this Court.

   **C.     The ALJ's Decision**

Generally, in her decision, the ALJ made the following findings of fact and conclusions of law. (Tr. 11-33). First, the ALJ found Plaintiff had not engaged in substantial gainful activity since

---

[1] The ALJ decision states the date last insured is December 31, 2018, however, the certified earnings record from August 19, 2016, state the date last insured is December 31, 2019. (Tr. 198).

June 23, 2014. (Tr. 16). Second, the ALJ found Plaintiff had the severe impairments of degenerative disc disease with radiculopathy, status post remote laminectomy; and trigeminal neuralgia. (*Id*.) Third, the ALJ found Plaintiff's impairments do not meet or medically equal one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (Tr. 19). Fourth, the ALJ found the Plaintiff would have the residual functional capacity (RFC) to perform sedentary work. (Tr. 20). The ALJ determined an exception to allow for an option to stand and stretch for two minutes after sitting for 45 minutes. (*Id*.). Fifth, the ALJ determined Plaintiff was able to perform her past relevant work as a receptionist. (Tr. 27). Sixth, the ALJ determined that in the alternative, Plaintiff has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy. (Tr. 28).

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes essentially three separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ failed to consider impairments at Step Two and throughout the sequential evaluation. (Dkt. No. 11 at 4 [Pl.'s Mem. of Law]). Second, Plaintiff argues the ALJ failed to properly evaluate opinions of record. Third, Plaintiff argues the ALJ failed to properly evaluate her credibility.

### B. Defendant's Arguments

In response, Defendant makes three arguments. First, Defendant argues that the ALJ properly assessed Plaintiff's impairments and resulting limitations (Dkt. No. 14 at 19 [Def.'s Mem. of Law]). Second, Defendant argues the ALJ properly evaluated the medical opinion evidence. Third, Defendant argues the ALJ properly assessed the consistency of the evidence, particularly as it applies to the credibility finding.

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's

4

independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

**IV.     ANALYSIS**

**A.  Evaluation of Impairments**

The ALJ found Plaintiff had the following severe impairments: degenerative disc disease ("DDD") with radiculopathy, status post ("s/p") remote laminectomy, and trigeminal neuralgia. (20 CFR § 404.1520(c) and 416.920(c)). (Tr. 16). The ALJ found the following nonsevere impairments: transient ischemic attack ("TIA"), osteoporosis, tobacco use, dyslipidemia, hypertension ("HTN"), insomnia, cystitis, hematuria, constipation, memory loss, depression, and

anxiety. (Tr. 17-18). The ALJ found her chronic obstructive pulmonary disease ("COPD") and ankle pain/sprain did not persist for, or were not expected to persist, at a severe level for a continuous twelve month period. (Tr. 17-18). The ALJ found Plaintiff had the RFC to perform sedentary work as defined in 20 CFR § 404.1567(a) and 416.967(a) as long as such work allows for the option to stand and stretch for two minutes after sitting for 45 minutes. (Tr. 20).

Plaintiff alleges that the ALJ failed to properly consider the combined effect of her physical and mental impairments at Step Two of the sequential evaluation and failed to develop the record with respect to Plaintiff's mental impairments. Although the Second Circuit has held that this step is limited to "screen[ing] out *de minimis* claims," *Dixon v. Shalala,* 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." *Coleman v. Shalala,* 895 F.Supp. 50, 53 (S.D.N.Y. 1995); *see Prince v. Astrue*, 514 F. App'x 18, 20 (2d Cir. 2013).

First, Plaintiff argues that the ALJ errored by concluding Plaintiff's "chronic conditions of anxiety, memory, depression, and COPD did not meet twelve month durational requirements." (Dkt. No. 11, p. 16). When considering Plaintiff's COPD, the ALJ discussed both the Plaintiff's testimony, that the symptoms were under control, and the medical records, which revealed significant improvement with medication and only one acute exacerbation. (Tr. 17). Plaintiff only cites an opinion from the consultative examiner, Dr. Miller, that she should "avoid respiratory triggers" as supporting her argument. (Dkt. No. 11, p. 18). The evidence of record however does not support Dr. Miller's opinion and contains relatively little evidence of any treatment for COPD. During the examination by Dr. Miller in December 2014, Plaintiff's lungs and chest exam were normal. (Tr. 474). Medical evidence suggests a 2012 COPD diagnosis with relief from an inhaler

6

when triggered by cold weather or upper respiratory infections. (Tr. 472). For instance, she had regular and unlabored respirations and clear lungs in January 2015, March 2015, September 2015, February 2016, and September 2016. (Tr. 581, 586, 591, 598, 605). Primary physician, Dr. Karaga, noted Plaintiff reported significant improvement of COPD in March 2015, and Plaintiff was cautioned to stop smoking on several occasions. (Tr. 584, 587, 597-98, 604). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel,* No. 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. March 19, 1999) (quoting *Bowen v. Yuckert,* 482 U.S. 137, 154 n.12, 107 S.Ct. 2287 (1987)). Given the lack of treatment and insignificant objective testing results, the ALJ properly determined that the COPD was not severe.

For the mental impairments, in addition to the typical five-step analysis outlined in 20 C.F.R. § 404.1520, the ALJ must apply a "special technique" at the second and third steps to evaluate alleged mental impairments. *See Kohler v. Astrue,* 546 F.3d 260, 265 (2d Cir.2008). As the Second Circuit has explained:

> This technique requires the reviewing authority to determine [at step two] first whether the claimant has a "medically determinable mental impairment." 20 C.F.R. § 404.1520a(b)(1). If the claimant is found to have such an impairment, [at step three] the reviewing authority must "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," *Id.* § 404.1520a(b)(2), which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *Id.* § 404.1520a(c)(3). According to the regulations, if the degree of limitation in each of the first three areas is rated "mild" or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not 'severe' and will deny benefits. *Id.* § 404.1520a(d)(1).

In her decision, the ALJ properly provided specific findings regarding the degree of limitation in each of the four functional areas in applying the "special technique" when evaluating the mental impairments, thereby rending a decision based on substantial evidence. (Tr. 18-19). For instance,

Plaintiff babysat grandchildren, did laundry, worked on puzzles, went shopping, prepared meals and drove. (Tr. 473, 521, 537, 546, 630). At Step Four of the evaluation, the ALJ again revisited the claimant's allegations of memory loss, depression and anxiety for a more complete review of the medical records, which bolstered her finding that the mental health impairments were not severe. (Tr. 23-24). Plaintiff is described in treatment notes as cooperative with adequate social skills and manner of relating; well-groomed with appropriate eye contact, clear and fluent speech, and coherent and goal directed thought processes. (Tr. 520, 535-36, 538, 541, 544, 547, 553-54, 557, 563, 598). Her concentration, attention, and memory were intact. (Tr. 520, 522, 532, 535-36, 541, 544, 547, 554, 557, 560, 563, 565, 581). Medical records show the majority of Plaintiff's mental complaints are related to worry over her heroin addicted son, to whom she was required to administer medication when he overdosed. (Tr. 452, 519, 527, 540, 546, 567, 572, 585).

The only evidence cited by Plaintiff in advancement of her argument that the mental health impairments are severe are conclusory statements by providers. (Dkt. No. 12, p. 20). Indeed, in 2014, psychiatric consultative examiner, Dr. Fabiano, opined moderate limitations in dealing with stress. (Tr. 521). In 2016, social worker, Ms. Nuessie, stated that due to Plaintiff's chronic anxiety and depression, combined with her increase in short term memory loss, it would be very difficult for her to sustain gainful employment. (Tr. 572). Later in 2016, pain specialist Dr. Zhan, and his Physician Assistant Roth, found "[Plaintiff] was not currently employed due to her chronic pain, longstanding history of depression, and for that reason, she applied for [SSD] which is on appeal. Based on her pain, depression, and poor functional status, [believe] she is quite a good candidate." (Tr. 625). However, opinions that Plaintiff would be a good candidate for social security disability benefits involves vocational considerations and are issues reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d) and 416.927(d). It is the Commissioner's responsibility to determine

whether a claimant meets the statutory definition of disability. *Cottrell v. Colvin*, No. 15-CV-702-FPG, 2016 WL 4523187, at *4 (W.D.N.Y. Aug. 30, 2016) (citation omitted); 20 C.F.R. § 404.1527(d)(1); *see* 20 C.F.R. § 404.1527(d)(3) ("We will not give any special significance to the source of an opinion on issues reserved to the Commissioner").

Plaintiff argues that the opinion by social worker Ms. Nuessie was improperly discounted because the ALJ failed to develop the record and improperly used the fact that there were missing treatment notes to diminish her opinion. (Dkt. No. 11, p. 21). The ALJ noted the opinion was undated and that the therapist was not an acceptable medical source under 20 CFR 404.1513(a) and 416.913(a). This was proper because social workers are not considered acceptable medical sources. *See Eusepi v. Colvin*, 595 F.App'x 7, 8-9 (2d Cir. Dec. 1, 2014); *see Bliss v. Comm'r of Soc. Sec.*, 406 F.App'x 541 (2d Cir. Jan. 19, 2011) (social workers ineligible to receive controlling weight). Rather, these individuals are considered an "other" source of evidence. *See* 20 C.F.R. § 404.1513(d)(3); *see also* SSR 06-03p. The ALJ's decision does not state there are missing records rather the records do not show treatment was more than routine and that her condition improved with medication adjustments. The ALJ stated there were not records for frequent emergency department visits or hospitalization for a mental health impairment. (Tr. 26-27). The Plaintiff did not allege any records were missing at the time of the hearing or that there were emergency department visits or hospitalizations. (Tr. 38-39). Further, despite the duty to develop the record, remand is not required where the record contains sufficient evidence from which the ALJ can assess the plaintiff's residual functional capacity. *Covey v. Colvin*, No. 13-CV-6602, 2015 WL 1541864, at *13 (W.D.N.Y. Apr. 6, 2015) (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013)). In this case, the record contains significant treatment evidence from neurological specialists Dr. Belen and Physician Assistants Story and Buttaccio, that document

9

Plaintiff's stress over her son's addiction, alleged memory loss, anxiety and depression. The ALJ's decision addressed these issues and cited significant medical records pertaining to the mental health impairments at both Step Two for severity and again at Step Four in the RFC. Therefore, the Court concludes there was no gap in the record and the ALJ did not fail to develop the record regarding mental impairments.

Similarly, the ALJ did not fail to develop the record when considering the chronic and degenerative conditions in formulating the RFC. The RFC is an assessment of "the most [Plaintiff] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ is responsible for assessing Plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statement about what Plaintiff can still do, provided by any medical sources. *Id*. §§ 404.1527(d), 404.1545(a)(3), 404.1546(c). Plaintiff disingenuously argues the opinions of "Dr. Miller, Dr. Fabiano, and a written consultant"[2] should not have been relied upon but also simultaneously argues that the limitations by Dr. Fabiano and Dr. Miller were not adopted. (Dkt. No. 11, p. 22). The ALJ based her finding of the RFC to perform sedentary work, with an option to stand and stretch for two minutes after sitting 45 minutes, on the record as a whole and not just those opinions. (Tr. 20). It was the ALJ's duty to assess all of the evidence, resolve any inconsistencies, and formulate an RFC finding that reflected all of Plaintiff's credible limitations. *See Davis v. Colvin*, No. 15-CV-6695P, 2017 WL 745866, at *11 (W.D.N.Y. Feb. 27, 2017); 20 C.F.R. §§ 404.1529, 404.1545, 404.1546, 416.929, 416.945, and 416.946. The evidence of record in this case, including Plaintiff's testimony, examination findings, opinion evidence, Plaintiff's prescribed treatment and response to treatment, and Plaintiff's activities of daily living, taken as a

---

[2] Plaintiff's brief does not identify what opinion she was referring to.

whole, support the ALJ's RFC finding. The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ. *See Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009).

**B. Opinion Evidence**

Despite similar arguments previously in her brief, Plaintiff reiterates that the ALJ failed to properly evaluate medical opinions and that the RFC finding was not supported by substantial evidence. Under the law, the ALJ is obligated to "evaluate every medical opinion we receive." 20 C.F.R. §404.1527(c). However, it is also the ALJ's duty to assess all the evidence, not just the opinion evidence, resolve any inconsistencies, and formulate a RFC finding that reflected all of Plaintiff's credible limitations. *See Davis v. Colvin*, No. 15-CV-6695P, 2017 WL 745866, at *11 (W.D.N.Y. Feb. 27, 2017). The ALJ properly considered all opinions and pertinent medical evidence.

As discussed above, the opinion from the social worker, Ms. Nuessie, was not entitled to weight. Social workers are not acceptable medical sources, but the ALJ considered the opinion, ultimately discrediting it as inconsistent with the extensive medical record. (Tr. 26).

As discussed above, primary physician Dr. Zhan and Physician Assistant Roth had offered conclusory statements that Plaintiff was "a good candidate for Social Security Disability" and would not have gainful employment based on chronic pain, longstanding depression, poor functional status, and her age. (Tr. 625, 634). This opinion was discussed previously as well. This is an issue reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d) and 416.927(d). The ALJ discussed Dr. Zhan's treatment record and other examination evidence in detail which did not support the opinion. Findings indicate tenderness, a slow steady gait, and decreased lumbar range of motion, but do not suggest any functional limitations. (Tr. 625, 634). Where a treating physician's treatment notes did not corroborate the physician's restrictive limitations, and were

11

contradicted by other medical evidence, the Second Circuit has held that an ALJ may properly decline to accord that treating provider's opinion significant weight. *Kennedy v. Astrue*, 343 F. App'x. 719, 721 (2d Cir. 2009). The ALJ was thorough in her discussion of the medical evidence and identifying inconsistencies that led her to reject the opinions. As cited by the Plaintiff, good reasons must be supported by evidence in the record, and must be sufficiently specific. *Harris v. Colvin*, 149 F. Supp. 3d 435 (W.D.N.Y. 2016); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). In this case, substantial evidence supports the weight that the ALJ attributed to those opinions which conflicted with the treatment notes, constituting a "good reason" for the limited weight attributed. *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004)(factors include, inter alia, frequency of examination; the evidence in support of the opinion; the consistency of the opinion with the record as a whole; other factors that tend to support or contradict the opinion).

### C. Credibility Finding

Plaintiff argues the ALJ failed to properly assess her credibility. In the decision, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms; however, the alleged intensity, persistence, and limiting effects were not entirely consistent with the record. (Tr. 20). The ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (quoting *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979)). In the instant case, the ALJ properly discussed objective medical evidence, treatment and response to treatment, activities of daily living, and medical expert opinion evidence. (Tr. 20-27). *See Schlichting v. Astrue*, 11 F. Supp. 3d 190, 205 (N.D.N.Y. 2012) (quoting *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999))("An administrative law judge may properly reject claims of severe, disabling

pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.").

Although the ALJ may not have specifically identified the steps of the credibility analysis as identified in SSR 16-3p, the extensive discussion by the ALJ of inconsistent evidence was sufficient to enable to Court to determine the legitimate reasons for the ALJ's disbelief. *See Rockwood v. Astrue,* 614 F. Supp. 2d at 270 (N.D.N.Y. 2009)(When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief.).

As cited by the ALJ, treatment was conservative. A pattern of conservative medical treatment is a proper factor for an ALJ to consider in evaluating a claimant's credibility. *See* e.g. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001)(citing *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). Plaintiff used medication, a heating pad, stretching and rest for relief of discomfort. (Tr. 625, 630, 633). She also received trigger point and epidural steroid injections, which helped. (Tr. 633, 648-49, 677, 668-69). Her pain control was noted to be reasonable by her pain specialist. (Tr. 670). Her mental health symptoms were treated with medication and therapy but did not require in-patient or hospitalization care. (Tr. 61-62, 518).

Also properly considered in making the credibility finding was the Plaintiff's activities of daily living. *See e.g. Wavercak v. Astrue*, 420 F. App'x 91, 94 (2d Cir. 2011); *Wolfe v. Comm'r of Soc. Sec.*, 272 F. App'x 21, 22 (2d Cir. Apr. 1, 2008) (same); *Donnelly v. Barnhart*, 105 F. App'x 306, 308 (2d Cir. Jul. 1, 2004) (same); see also, *Pennock v. Comm'r of Soc. Sec.*, 7:14-CV-1524 (GTS/WBC), 2016 WL 1128126, at *5 (N.D.N.Y. Feb. 23, 2016), report and recommendation adopted, 2016 WL 1122065 (N.D.N.Y. Mar. 22, 2016). The record shows that Plaintiff drove,

prepared meals, did laundry, babysat her grandchildren, worked with puzzles, read, and went shopping (Tr. 473, 521, 537, 546, 630). Other evidence describes her as independent with daily activities (Tr. 546, 670).

Due to the fact that the ALJ has the benefit of directly observing a claimant's demeanor and "other indicia of credibility," the ALJ's credibility assessment is generally entitled to deference. *Weather v. Astrue*, 32 F. Supp. 3d 363, 381 (N.D.N.Y. 2012) (citing *Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir. 1999)). In this case, the ALJ's determination was supported by substantial evidence and therefore the Court will defer to her finding. *Selian v. Astrue*, 708 F.3d 409, 420 (2d Cir. 2012); *Aponte v. Sec'y. Dep't of Health & Human Servs.*, 728, F.2d 588, 591 (2d Cir. 1984)( Because it is the function of the Commissioner and not the reviewing courts to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant, the Court will defer to the ALJ's determination as long as it is supported by substantial evidence.).

**ACCORDINGLY, it is**

**ORDERED that Plaintiff's motion for judgment on the pleadings is**

**<u>DENIED</u>; and it is further**

**ORDERED that Defendant's motion for judgment on the pleadings is**

**<u>GRANTED</u>; and it is further**

**ORDERED that Plaintiff's Complaint is <u>DISMISSED</u>.**


**Dated: September 16, 2019**            *<u>J. Gregory Wehrman</u>*

    **Rochester, NY**            **HON. J. Gregory Wehrman**
                                                  **United States Magistrate Judge**